UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DILBAG SINGH,

                Petitioner,

    v.

KRISTI NOEM, et al.,

                Respondent.

Case No. 2:26-cv-00402-TLF

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Immigration detainee Dilbag Singh petitions the Court under 28 U.S.C. § 2241 for an order (1) immediately releasing him from detention; (2) enjoining his re-detention during the pendency of his removal proceedings absent written notice and a hearing before re-detention where the Government must prove by clear and convincing evidence that petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks; (3) enjoining the Government from placing GPS ankle monitors on petitioner upon his release, absent clear and convincing evidence that petitioner is a flight risk or danger to the community and that no other alternatives would mitigate those risks; (4) declaring that petitioner's re-detention while removal proceedings are ongoing without first providing an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment; (5) awarding attorney fees and costs. Dkt. 1 (petition).

## BACKGROUND

1    Petitioner is a native and citizen of India who entered the United States as an
2 unaccompanied minor without inspection or parole at or near Lukeville, Arizona on or
3 about July 21, 2025. Dkt. 7 (Declaration of Javier Delgado ("Delgado Decl.")) ¶ 4. On
4 July 22, 2025, petitioner was placed in Immigration Court proceedings by issuance of a
5 Notice to Appear ("NTA"). *Id.* ¶ 5; Dkt. 8 (Declaration of Alixandria K. Morris ("Morris
6 Decl.")), Exs. 1-3 (NTA; Superseded NTA; I-213). Petitioner was served with a
7 superseding NTA on August 2, 2025, charging him as inadmissible under section
8 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). Dkt. 7 (Delgado Decl.) ¶ 5;
9 Dkt. 8 (Morris Decl.), Exs. 1-3.
10   Petitioner was transferred to a juvenile center, on July 23, 2025. Dkt. 7 (Delgado
11 Decl.) ¶ 6. The Government[1] asserts that when petitioner reached the age of 18 on
12 August 9, 2025, Immigration and Customs Enforcement "ICE" conducted an
13 individualized assessment of petitioner in accordance with the requirements of the
14 injunction in the nationwide class-action *Garcia Ramirez v. U.S. Immigr. & Customs*
15 *Enf't*, 310 F. Supp. 3d 7, 13 (D.D.C. 2018) ("Garcia Ramirez"), requiring that DHS and
16 ICE consider less restrictive placements than an ICE adult detention facility when
17 unaccompanied immigrant minors turn eighteen. *Id.* ¶ 8. Petitioner was released on an
18 Order of Recognizance ("OREC") on August 9, 2025, because it was determined that
19 this was the least restrictive detention setting. *Id.*
20   Petitioner reported to Enforcement and Removal Operations ("ERO") in Seattle,
21 Washington on November 10, 2025. *Id.* ¶ 9. On January 15, 2026, petitioner reported
22 again to the Seattle ERO Field Office for scheduled reporting. *Id.* ¶ 14. Petitioner was

23 ──────────────────
24 [1] Hereinafter the Court refers to the respondents collectively as "the Government."

25

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 2

taken into custody on that date and transferred to the Northwest ICE Processing Center ("NWIPC") where he remains detained. *Id.* ¶ 15; Dkt. 8 (Morris Decl.), Exs. 4-5 (Arrest Warrant; Notice of Custody Determination).

The Government submits the declaration of Deportation Officer Javier Delgado, which asserts the following regarding the basis for petitioner's re-detention:

> When departing [ERO on November 10, 2025], Petitioner reportedly attempted to sexually assault another individual by the north public parking area. ERO became aware of the sexual assault complaint against Mr. Singh when two Tukwila police officers came to the facility and informed ERO officers that the complaint had been made. The local police officers came to ERO to confirm Singh's identity and presence, and to see if there was any security footage from the assault. ERO directed the police officers to speak with the facility manager to obtain footage, as ERO officers do not have access to security footage.
> On December 12, 2025, a federal court in D.C. issued a ruling enforcing a permanent injunction in the *Garcia Ramirez* case.
> Pursuant to the court's December 2025 order in *Garcia Ramirez*, an individualized assessment was conducted on petitioner's case again. Prior to his arrest and revocation of his OREC, ICE reviewed three factors: danger to self, danger to community, and flight risk. In accordance with Garcia Ramirez, ICE is required to choose the least restrictive detention setting (OREC, ICE BOND, ICE ATD, and Detention) that mitigate identified factors. An OREC release cannot mitigate danger to the community, and aliens who are determined to be dangers to the community are taken into custody.
> It was determined that Petitioner's attempt to sexually assault a female on November 10, 2025, constituted a material change in circumstances and that Petitioner represents danger to the community due to his attempt to sexually assault another individual. Therefore, it was determined that Petitioner would be detained.
> The decision to detain Petitioner was provided to the *Garcia Ramirez* court in ICE's December report. No objection to petitioner being brought into custody has been raised by class counsel.

Dkt. 7 (Delgado Decl.) at 2-3.

## DISCUSSION

**A.     *Garcia Ramirez v. U.S. Immigr. & Customs Enf't***

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 3

The Government first argues relief should be denied because petitioner is a member of the certified nationwide class in *Garcia Ramirez v. U.S. Immigr. & Customs Enf't.*, 310 F. Supp. 3d 7, 13 (D.D.C. 2018) ("*Garcia Ramirez*"). Dkt. 6 at 2. The Government asserts petitioner's re-detention decision was reported to the *Garcia Ramirez* Court in December 2025, and no objection has been raised by class counsel. *Id.*

In *Garcia Ramirez* plaintiffs – immigrant teenagers who entered the United States without inspection as unaccompanied minors -- brought a class action lawsuit alleging that, upon reaching their eighteenth birthdays, ICE was transferring them to adult detention facilities without considering placement in the least restrictive setting available, as required by 8 U.S.C. 1232(c)(2)(B).[2] *Garcia Ramirez*, 310 F. Supp. 3d 7. On April 18, 2018, the Court granted a motion for preliminary injunction, ordering that ICE comply with 8 U.S.C. § 1232(c)(2)(B). *Id.* The class was certified. *See Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10 (D.D.C. 2021).

Following a bench trial, the Court found that ICE had violated the Administrative Procedure Act ("APA") by failing to follow procedures made necessary by 8 U.S.C. § 1232(c)(2)(B), and for refusing to take actions it was required to take under that statute

---

[2] 8 U.S.C. § 1232(c)(2)(B) provides:

> If [an unaccompanied alien child in the custody of the Secretary of Health and Human Services "HHS"] reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary [of DHS] shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.

which requires ICE to "consider plac[ing]" age-outs in ICE custody "in the least restrictive setting available after taking into account" certain risk factors and to make them "eligible to participate in alternative to detention programs." *Id.* (quoting 8 U.S.C. § 1232(c)(2)(B)). In 2021, the Court entered a final judgment and issued a permanent injunction requiring ICE to comply with their statutory obligations under Section 1232(c)(2)(B). *Id.*

Four years later, plaintiffs moved the Court to enforce the final judgment and permanent injunction. *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, No. CV 18-508 (RC), 2025 WL 3563183, at *1 (D.D.C. Dec. 12, 2025). Plaintiffs alleged that,

> on October 1, 2025, Defendants implemented a new policy for ICE's processing of age-outs, namely, a new decision-making process for age-out custody determinations. Plaintiffs claim that this policy fails to afford age-outs with the protections they are entitled to under Section 1232(c)(2)(B). Plaintiffs further allege that Defendants, in violation of Section 1232(c)(2)(B), have been re-arresting and detaining age-outs after ICE initially releases them, despite no material change in the age-outs' circumstances indicating they pose a danger or flight risk that would justify detention.

*Id.*

On December 12, 2025, the Court found that defendants' policy and re-arrest conduct violated their obligation to comply with Section 1232(c)(2)(B) when making age-out custody determinations. *Id.* Accordingly, the Court granted plaintiffs' motion to enforce and enjoined the policy's implementation and defendants' re-arrest conduct. *Id.*

The Government contends that in the case at issue here the decision to detain petitioner was provided to the *Garcia Ramirez* court in ICE's December report and no objection to petitioner being brought into custody has been raised by class counsel. Dkt. 7 (Delgado Decl.) at ¶ ¶ 13, 14.

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 5

The Ninth Circuit in *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013), explained that a "district court may dismiss 'those portions of [the] complaint which duplicate the [class action's] allegations and prayer for relief.' " *Id.* (quoting *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979)). But, the Ninth Circuit noted, "a district court may not 'dismiss[ ] those allegations of [the] complaint which go beyond the allegations and relief prayed for in [the class action].' " *Id.* (citations omitted).

Here, petitioner alleges the Government violated due process in re-detaining him in January 2026 without notice and a hearing after ICE made its age-out least restrictive placement determination and released him on an OREC in August 2025. Petitioner's constitutional due process habeas claim is not identical to the claims raised in the *Garcia Ramirez* class action. The *Garcia Ramirez* class action dealt with a violation of the APA and ICE's failure to comply with their statutory obligations under Section 1232(c)(2)(B) relating to age-out least-restrictive placement determinations and ICE's policy of subsequent re-detention of aged-out individuals without showing of material changed circumstances. *See, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 729 (W.D. Wash. 2025) (finding a separate class action did not prevent the Court from adjudicating habeas petitioner's due process claim seeking an injunction preventing removal to a third country without due process including the opportunity to seek withholding of removal in part because it was not identical to the claims in the class action which concerned claims under the Convention Against Torture).

Petitioner's individual habeas petition also does not raise a complaint seeking systemic relief for immigrant teenagers in ICE custody who entered the United States without inspection as unaccompanied minors and subsequently "aged out", as in *Garcia*

*Ramirez*. *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 729 (finding separate class action did not prevent the Court from adjudicating individual habeas petition seeking injunction preventing removal to a third country without due process where petitioner did not raise a complaint to systemic relief for detainees fearing third-country removal generally as in the class action).

For these reasons, the Court declines to dismiss petitioner's claims.

**B.      Mandatory or Discretionary Detention**

The Government argues relief should be denied because petitioner is mandatorily detained under 8 U.S.C. § 1225. Dkt. 6 at 9-10. In determining whether petitioners who have been apprehended on arrival, released, and later apprehended again, are subject to discretionary detention under § 1226(a) or mandatory detention under § 1225(b), the Court considers the Government's treatment of the petitioner seeking habeas relief as "particularly relevant." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025). Where petitioner is "'treated by Respondents as subject to detention under § 1226, rather than mandatory detention under § 1225,' the former is more likely to apply." *Id.* (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (W.D. Wash. Aug. 19, 2025).

Persons detained under § 1225 may only be released under the agency's parole authority. 8 U.S.C. § 1182(d)(5)(A). Here, the parties agree petitioner was released on an Order of Recognizance ("OREC"). Release or "conditional parole" under an OREC is authorized under § 1226(a)(2)(B). *See* 8 U.S.C. § 1226(a)(2)(B); *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding noncitizens

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 7

released on an OREC must necessarily have been detained and released under § 1226). Furthermore, the Notice to Appear ("NTA") reflects that petitioner is charged only under § 1182(a)(6) as "present in the United States without being admitted or paroled" which supports the conclusion that he is detained under § 1226(a). *Del Valle Castillo*, 2025 WL 3524932, at *6; *Rodriguez Vazquez*, 2025 WL 2782499, at *17.

The Court thus finds § 1226 governs petitioner's detention, and he is not subject to mandatory detention under § 1225.

**C.    Due Process**

The Government next argues petitioner was properly re-detained without notice or a hearing because re-detention following revocation of petitioner's prior release was authorized under the relevant regulations, and the sexual assault allegations against petitioner constitute a material change in circumstance justifying his re-detention.

Applying *E.A. T.B v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. Aug. 18, 2025) the Court finds petitioner possesses due process protections and reviews the Government's decisions and actions to deprive petitioner of his liberty interests under the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): The private interest affected by the official action; the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

1.   Private Interest

As to the first factor, the Court rejects the notion that petitioner's weighty liberty

1 interest is greatly diminished solely because he is a noncitizen in immigration
2 proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint
3 is at the core of the liberty protected by the Due Process Clause from arbitrary
4 governmental action) *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due
5 Process Clause applies to all "persons" within the United States, including noncitizens,
6 whether their presence here is lawful, unlawful, temporary, or permanent."). Further,
7 even if the Government had initial discretion to detain or release petitioner, its decision
8 to release him on conditional parole triggers "a protected liberty interest in remaining out
9 of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N. D. Cal. 2025); *Doe v.
10 Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been
11 released from custody, even where such release is conditional, have a liberty interest in
12 their continued liberty.").

13   Here, petitioner was released on an OREC, after considering petitioner's
14 dangerousness and risk of flight prior to his release, and he has a protected liberty
15 interest in remaining out of custody. The Government argues that ICE has discretion to
16 re-detain petitioner at any time under 8 C.F.R. § 236.1(c)(9), which provides that
17 release "may be revoked at any time" in the discretion of authorized officials. Dkt. 6 at 9-
18 10. But even assuming no specific processes were required under a regulation, Fifth
19 Amendment Due Process protections apply.

20   The first factor weighs in petitioner's favor.
21   2.  Risk of Erroneous Deprivation

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 9

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet there "may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 - *12 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031-1032, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

Courts have also held that where a noncitizen is released after an evaluation of their dangerousness and flight risk, their re-arrest and re-detention generally requires a showing of a material change in circumstance. *See, e.g., dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (granting habeas relief and immediate release where Government presented no evidence that "a change in circumstances" supported its decision to revoke the IJ's bond order); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that "DHS has incorporated [*Sugay*'s] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 10

decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The Government asserts petitioner was properly re-detained based on a change in circumstance; they rely on an allegation that petitioner sexually assaulted another individual. The evidence of the allegation of sexual assault is based solely on the declaration of Officer Delgado who states the following:

> When departing [ERO on November 10, 2025], Petitioner reportedly attempted to sexually assault another individual by the north public parking area. ERO became aware of the sexual assault complaint against Mr. Singh when two Tukwila police officers came to the facility and informed ERO officers that the complaint had been made. The local police officers came to ERO to confirm Singh's identity and presence, and to see if there was any security footage from the assault. ERO directed the police officers to speak with the facility manager to obtain footage, as ERO officers do not have access to security footage.

Dkt. 7 (Delgado Decl.) at 2-3.

Officer Delgado does not assert any personal knowledge of the alleged sexual assault, but he does assert he has knowledge based on "various records and systems maintained by ICE in the regular course of business, including but not limited to the alien registration file, DHS databases, and notes from the previous and current officers in charge of the case relating to Petitioner" and reasonable inquiry. Dkt. 7 (Delgado Decl.) at 1-2 ¶ ¶ 2-3. Yet the Government fails to provide any documentation in the record relating to or supporting the allegations of an attempted sexual assault.

The form submitted in support of the response brief, states that petitioner does not have criminal history; and there is no indication the Government attempted to re-detain petitioner when they learned of the allegations (of an attempted sexual assault that allegedly happened in the parking lot of an ERO facility in Seattle on November 10,

2025) prior to his regular check-in on January 15, 2026. Dkt. 6 (Response Brief) at 5-6, ; Dkt. 7 (Delgado Decl.) at 2-3 ¶ ¶ 9, 12; Dkt. 8 (Morris Decl.); Dkt. 8-3, (Ex. 3).

Although the response brief states that petitioner's attempted sexual assault was documented on camera, no such documentation has been presented to this Court. Dkt. 6, at 10-11.

The Court finds, under the circumstances, the risk of erroneous deprivation is high.

Thus, the Court finds the second *Mathews* factor favors petitioner.

3.   Government's Interest

The Government's interest in civil detention without a detention hearing is low. *See E.A. T.B*, 795 F. Supp. 3d at 1323-24 (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.")).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," which requires an analysis of the meaningful time to hold a hearing. *Mathews*, 424 U.S at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965*)*). On the facts of this case, the Court must determine whether a pre-deprivation hearing is required, or whether the Government may conduct a hearing after an individual in petitioner's situation is initially arrested and detained by ICE. *See generally, Gerstein v. Pugh*, 420 U.S. 103, 112-13, 125 (1975) (a determination of probable cause must be decided by a neutral and detached magistrate as soon as possible after a warrantless arrest); *County of Riverside v. McLaughlin*, 500

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 12

U.S. 44, 55-56 (1991) (under the Fourth Amendment, a person arrested without a warrant must be brought before a neutral magistrate within 48 hours of arrest (or less, if the person can prove the probable cause determination was delayed unreasonably)).[3]

The Court in *O.F.C. v. Almodovar,* No. 25-cv-9816 (LJL), 2026 WL 74262 (S.D. N.Y. January 9, 2026) held that a post-deprivation hearing would be required by Due Process, rather than a pre-deprivation hearing, to determine whether a change in circumstances had occurred since the petitioner was released on conditions. The alleged material change in circumstances was that petitioner had been convicted in state court of driving-related offenses. *Id.* at *3. The Court considered the implications of *Morrissey v. Brewer,* 408 U.S. 471 (1972), and observed that if a noncitizen released on bond has not committed a criminal offense, then the analogy to *Morrissey v. Brewer* is not as strong. *O.F.C.*, 2026 WL 74262 at *12.

In this case, the Government has not provided the Court with any indication whether the investigation by Tukwila Police is still underway, whether there have been charges, or whether there is a criminal case pending. Yet even if local authorities decide not to pursue a criminal charge, there may still be evidence that would meet the clear and convincing standard to establish that petitioner is a danger to the community. *See Vizhco Chunchi v. Francis,* No. 25-cv-10249 (ER), 2026 WL 249676 (S.D. N.Y. January 30, 2026) at *3 (petitioner arrested for criminal offenses; post-deprivation hearing by

---

[3] The petitioner has not raised a Fourth Amendment issue; the Court therefore is not independently analyzing the arrest and detention under the Fourth Amendment. Yet the liberty interests of a person arrested under an immigration detainer or warrant, analyzed under the Fifth Amendment due process analysis of *Matthews*, are similar to the liberty interests recognized in *Gerstein. See, Kakkar v. Chestnut,* 1:25-CV-1627 JLT SAB, 2025 WL 3638298 (E.D. Cal. December 15, 2025) (person recently released from prison would not have the weighty significant private interest under *Mathews* as a person who had been successfully compliant with conditional release for a lengthy period before re-arrest on immigration matter).

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 13

1 Immigration Judge was appropriate Due Process habeas corpus relief). In *Morrissey v.*
2 *Brewer*, the Court did not limit the permissible justification for a parole violation arrest
3 and detention only to circumstances where a parolee was charged with or convicted of
4 a new crime. 408 U.S. 471.
5     If a post-deprivation hearing is the proper due process approach, the Court also
6 needs to determine the reasonable time for a post-deprivation bond hearing. *See*
7 *Morrissey,* 408 U.S. 471 (probable cause hearing required after arrest for parole
8 violation, and revocation hearing must take place within a reasonable time); *Pham v.*
9 *Becerra,* 2023 WL 2744397, at *7 (N.D.Cal., 2023) (within 5 days after court order);
10 *Perera v. Jennings*, 2021 WL 2400981, at *6 (N.D.Cal., 2021) (within 7 days); *Carballo*
11 *v. Andrews,* No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal.
12 Aug. 15, 2025) (14 days); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT
13 HBK, 2025 WL 2495767, at *12 - *14 (E.D. Cal. Aug. 28, 2025) (holding that petitioner's
14 ATD records indicated numerous violations, and if the government's view of the facts
15 were correct, it was "at least arguable that providing petitioner with notice and a pre-
16 deprivation hearing would have been impracticable and/or would have motivated his
17 flight," and ordering a post-deprivation bond hearing within 10 days).
18     "The government has an obvious interest 'in protecting the public from dangerous
19 criminal [noncitizens].'" *Rodriguez Diaz v. Garland*, 53 F.4th at 1189, 1208 (9th Cir.
20 2022) (quoting *Demore v. Kim*, 538 U.S. 510, 515 (2003)). Yet when the government
21 conducts a warrantless arrest for criminal charges, an individual is entitled to notice of
22 the criminal charges at an initial appearance within 48 hours of being arrested, and the
23 government must provide a detention or release hearing before the individual is

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 14

committed for pretrial detention. *See McLaughlin*, 500 U.S. at 55-56; *Gerstein,* 420 U.S. 103, 112 (1975) (a determination of probable cause must be decided by a neutral and detached magistrate as soon as possible after a warrantless arrest); 18 U.S.C. § 3142; *see also, Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 822-826 (9th Cir. 2020) (Discussing *U.S. v. Brignoni-Ponce,* 422 U.S. 873, 882-887 (1975), pointing out the tangible consequences of unreliability of database information to support an ICE detainer, and holding that under *U.S. v. Brignoni-Ponce, County of Riverside v. McLaughlin,* and *Gerstein v. Pugh*, the Fourth Amendment requires a neutral and detached executive official such as an immigration judge "who is independent of police and prosecution", and requires a probable cause determination within 48-hours of arrest, for a determination of probable cause as a prerequisite to extended detention, in the civil immigration context for arrest on ICE detainers).

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore,* at 518). "The Supreme Court has instructed that in a *Mathews* analysis, we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" *Id*. (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

Even though the Government has a strong interest in enforcing immigration laws and ensuring community safety, it has not articulated a compelling interest in re-detaining an individual who was on conditional release without Due Process notice or hearing. Providing a hearing before an immigration judge would require the Government to bear the administrative costs of due process, but those costs are minimal when

weighed against the severe deprivation of liberty at stake. The Government's interest in bypassing basic procedural protections is low. *See Ortega*, 415 F. Supp. 3d at 970 ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so *without a hearing* is low.") (emphasis added).

Although it would require the expenditure of resources to provide petitioner a post-deprivation hearing, held by an immigration judge within a reasonable time after re-detention, and to have the hearing conducted with due process protections under *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) to justify immigration re-detention by clear and convincing evidence, and provide adequate notice and due process protections similar to hearings under *Morrissey v. Brewer,* 408 U.S. 471 (1972), those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.

Because the Government has failed to demonstrate a substantial interest in reducing the due process protections, and because the administrative burden of providing a timely hearing is outweighed by the serious risk of erroneous deprivation, and the petitioner's strong interest in continued liberty on conditional parole, the third *Mathews* factor also weighs in petitioner's favor.

D.    **Request for Permanent Injunctive Relief**

Petitioner also seeks an order, that if he is released by the Government, the Court should (a) enjoin his re-detention during the pendency of his removal proceedings absent written notice and a hearing before re-detention where the Government must prove by clear and convincing evidence that petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks; and (b)

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 16

enjoin the Government from placing GPS ankle monitors on petitioner upon his release, absent clear and convincing evidence that petitioner is a flight risk or danger to the community and that no other alternatives would mitigate those risks. The Court denies petitioner's requests for prospective injunctive relief. Petitioner has not argued the requirements of *Winter v. Natural Resources Defense Council Inc.*, 555 U.S. 7 (2000).

## CONCLUSION

The Court GRANTS the petition for writ of habeas corpus IN PART and ORDERS:

(1) The Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b).

(2) The COURT GRANTS IN PART petitioner's request for habeas corpus relief. The Court DENIES petitioner's request for immediate release. The Court ORDERS the Government to provide petitioner a hearing within 10 business days after this Order is filed in which the Government bears the burden of proof, under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), to justify immigration re-detention by clear and convincing evidence. The Government must provide adequate notice and due process protections similar to hearings under *Morrissey v. Brewer*, 408 U.S. 471 (1972). The hearing shall be conducted by an immigration judge to determine whether release on conditions should be granted, or whether detention is warranted. If no such hearing is held, and the Government does not request any extension of time based on good cause, then the Government must release the petitioner on the same conditions he was previously subject to for the OREC, immediately after the 10-day deadline for a hearing expires.

(3) The Court **DENIES** without prejudice petitioner's request for an injunction (a) enjoining his re-detention during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where the Government must prove by clear and convincing evidence that petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks; and (b) enjoining the Government from placing GPS ankle monitors on petitioner upon his release, absent clear and convincing evidence that petitioner is a flight risk or danger to the community and that no other alternatives would mitigate those risks.

(4) The parties shall file a joint status report within 48 hours after the hearing confirming that the hearing was conducted.

(5) If petitioner is instead released, then no later than two days after petitioner's release (for example, if petitioner is released on a Monday, then the Government shall file the declaration no later than Wednesday; or, if petitioner is released on a Friday, then the declaration shall be filed no later than the following Monday) the Government must file with the Court a declaration confirming the date and time petitioner has been released from custody.

(6) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 12th day of March, 2026.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge